## Commonwealth v. Dupree, Appellant.

Submitted March 17, 1969. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Charles W. Bowser,* for appellant.

*Fortunata Giudice* and *James D. Crawford,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, June 12, 1969:
Order affirmed.

---

DISSENTING OPINION BY HOFFMAN, J.:

This is an attack on a guilty plea on the grounds that it was unlawfully induced.

Appellant testified at a hearing pursuant to the Post Conviction Hearing Act, Act of January 25, 1966, P. L. (1965) 1580, 19 P.S. 1180-1 et seq., that he was arrested by police and questioned concerning two robberies. He confessed to one robbery but maintained his innocence with respect to the other. The police then told him that if he did not confess to both robberies his wife, the mother of his three young children, would be arrested and prosecuted as an accomplice in connection with the second robbery.

Subsequently, defense counsel also told appellant that his wife might be involved and advised him that since he was going to jail for the first robbery anyway, he might as well protect his wife from involvement and plead guilty to the second robbery.

Appellant's trial lawyer confirmed this testimony. "A. I also was informed that the money had been put upon a table in his home, in (appellant's) home, and divided in the presence of his wife. I advised him that there was a possibility of his wife being implicated on a criminal charge and, to save him the mental anguish of his wife also being implicated, it was best that he enter a plea of guilty and receive as lenient a sentence as possible from the court. . . . Q. You did discuss with (appellant) the fact that his wife might be involved? A. Yes, I definitely remember that because the co-defendant . . ., if I remember correctly, stated in his statement to the police that (appellant) supplied the guns for the hold-up and they got them at (appellant's) house where his wife was living with

him; and also that the proceeds of the (first robbery) were divided at his house in her presence. Q. Then actually, would you say then subjectively that this was a consideration, a practical consideration on his part, or an additional reason, I will put it that way, for entering guilty plea? A. Well, I told him there was a possibility of his wife being implicated in it and he should take that into consideration. No question in mind. I remember it distinctly."

The post-conviction hearing court, however, refused to vacate appellant's guilty plea to the second robbery. The court did not contest the validity of appellant's assertions. Instead, it noted that "it has been argued that the petitioner entered his pleas of guilty because of the fear of consequences that might result to his wife as perhaps an accessory after the fact of armed robbery. That may have been a consideration that moved him to enter the plea, but that is no lawful reason for striking down a plea thus entered."

In *Commonwealth v. Baity*, 428 Pa. 306, 237 A. 2d 172 (1968), the Supreme Court reiterated that where the police use threats or tactics which are likely to produce false confessions the confession must be held inadmissible. The same principle would apply to invalidate a guilty plea which is the product of such a confession or is similarly coerced.

In its discussion of "the type of trick which can rise to a deprivation of due process" the court cited *Spano v. New York*, 360 U.S. 315 (1959). In *Spano*, "the defendant, after shooting to death an ex-prize-fighter who had beaten him earlier in the evening, telephoned his close friend, one Gaspar Bruno, a rookie policeman, and told Bruno that he had killed decedent because he was still in a daze from the beating. Placing duty before friendship, Bruno immediately relayed this information to his superiors who arrested defend-

ant. When defendant blithely refused to answer any questions without his lawyer, the detectives contacted Bruno and suggested that he tell defendant that his (defendant's) refusal to confess was making Bruno's story look untrue and that as a result Bruno would be in serious trouble if defendant did not talk. Bruno agreed, although in fact his job was in no way threatened. Then, after he had thrice met with Spano, and pleaded with him to confess, the defendant, to save both his friendship with Bruno and the latter's job, admitted the killing. This confession was quite naturally held involuntary." *Baity*, at 315-316.[1]

In the instant case, the post-conviction hearing court found that appellant's desire to shield his wife, the mother of his three children, from prosecution was a motivating factor inducing his guilty plea. This consideration, which was stressed by both the police and appellant's counsel, seems to me to be substantially more overbearing than the threat that failure to confess will lead to the loss of a friendship and a friend's job, as was the case in *Spano*.

In addition, I believe that the Commonwealth's reliance on *Commonwealth v. Garrett*, 425 Pa. 594, 229 A. 2d 922 (1967) is misplaced. In *Garrett*, the court stated that, "There are, moreover, many (legitimate) reasons, other than the existence of the confession, which may influence the defendant's decision to plead (guilty). For example, he may . . . wish to avoid the

---

[1] The court in *Baity* also noted that, "Although the Commonwealth in its brief suggests that a distinction has been drawn between those cases involving a trick based upon an underlying statement that was itself true, and one employing a statement that was never in fact made, we find no support for such a distinction in the cases. Nor do we think it would be a meaningful distinction if made. The test here, as is the test for any involuntary confession, must concern itself with those elements impinging upon a defendant's will." at 315, ftn. 7.

glare of publicity of a jury trial and save his family from the resulting embarrassment." at 598.

The example in *Garrett* is distinguishable from the instant case. It would seem clear that an innocent man would be more likely to plead guilty to avoid having his wife prosecuted than to avoid having a public trial. Although the latter consideration may be of more subjective importance to some individuals, objectively, the threat of prosecuting one's wife is as coercive a threat imaginable to a husband and father.

Nor are we confronted with the question of procedural waiver in this case, as the court was in *Garrett*. In *Garrett*, it was stated that if a confession is involuntary, the defendant may waive the right to contest the involuntariness of the confession if his lawyer, with full knowledge of the facts, decides to recommend a plea of guilty and such plea is accepted by the defendant. The lawyer in that circumstance need not consult with his client as to the possible attack that could be made on the involuntary confession if there is overwhelming proof that the defendant is indeed guilty of the crime and independent reason would justify the entrance of the plea. "Accordingly, it would be inconceivable that the average criminal defendant would be able to comprehend the frequently fine line between an involuntary and voluntary confession. (Citation omitted). To suggest, as Judge HIGGINBOTHAM does in United States ex rel. Cuevas v. Rundle, 258 F. Supp. 647 (E.D. Pa. 1966), that a defendant must always be told of the theoretical possibility that a confession could be excluded is of no avail if the defendant lacks the ability and knowledge to be able to make a rational tactical choice based upon that information. On the other hand, the decision to plead, while often an excruciating one, does not require the same degree of sophistication." at 600-601.

The instant case, however, presents a different situation from that in *Garrett*. *Garrett*, as well as *Baity*, which followed, dealt with a situation where the coercive factor which induced the confession was not present at the time the guilty plea was entered. Appellant or his counsel could make a fresh tactical determination as to whether to attack the forced confession.

In the instant case, however, the police threat to prosecute appellant's wife did not expire prior to the entry of the guilty plea. Instead, appellant had every reason to believe that if he did not plead guilty the police could and would invoke the promised sanctions. Appellant, therefore, was faced with the choice of either seeing his wife prosecuted or pleading guilty. This choice can "readily be classified as 'grisly'" and negates the conclusion that appellant's guilty plea constituted a deliberate bypass and waiver of available state procedures for raising the issue of voluntariness. *Commonwealth v. Snyder*, 427 Pa. 83, 93, 233 A. 2d 530 (1967). Thus, we have a situation which conforms to the statement in *Garrett* that "there are instances where the guilty pleas must be equated with a second confession whose voluntariness is undercut by a prior invalid confession. . ." at 597.[2]

In such circumstances, the petitioner need only prove that the illegal threat was the primary motivation for his plea of guilty. Cf. *Garrett* at 598.

The post-conviction hearing judge found that the police threat to prosecute appellant's wife and his

---

[2] Moreover, appellant's trial counsel indicated that he not only suggested to appellant that the police would not prosecute appellant's wife in exchange for a guilty plea, but also that he himself was influenced by this consideration in recommending that such a plea be entered. We cannot state that an attorney's decision based on such coercive considerations can bind his client to a plea of guilty. Cf. Mr. Justice ROBERTS' view in *Commonwealth v. Baity*, supra at 319.

counsel's reiteration that the police might do just that "may have been a consideration that moved (appellant) to enter the plea." Moreover, the testimony by appellant's counsel at the hearing indicated that this factor was taken into consideration by appellant. Once such a brutal threat enters into the calculus of a defendant's determining whether to plead guilty, it becomes impossible to decide whether that threat may have been the motivating factor for entry of the guilty plea.

Accordingly, the guilty plea must be invalidated.

I would vacate the judgment of sentence below and order a new trial.

MONTGOMERY and SPAULDING, JJ., join in this dissenting opinion.