Commonwealth *v.* Walker, Appellant.

Submitted November 11, 1968. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Philip Price, Jr.,* and *Melvin Dildine,* Assistant Defenders, and *Herman I. Pollock,* Defender, for appellant.

*Paul R. Michel* and *James D. Crawford,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, January 15, 1969:

This is an appeal from the denial, after hearing, by the Court of Oyer and Terminer of Philadelphia County, of appellant's petition for post-conviction relief. Appellant, after a plea of guilty, had been convicted of first degree murder in 1962. The evidence indicated that appellant, along with one Earl Franklin, had burglarized a store in North Philadelphia, that they had both beaten the proprietor, and that Franklin had stabbed him, causing his death. At the degree of guilt hearing, a confession given by appellant was introduced without objection, and appellant took the stand in his own behalf.

Appellant, represented by counsel in his Post Conviction Petition, asserts three grounds for relief. He alleges (1) an involuntary confession induced his guilty plea; (2) he entered the guilty plea unknowingly, being unaware of the consequences of such plea; and (3) he was denied effective assistance of counsel. We find no merit in any of these.

We consider first the claim that his guilty plea was motivated primarily by an involuntary confession. *Commonwealth v. Garrett*, 425 Pa. 594, 229 A. 2d 922 (1967). There was testimony, tending to refute appellant's claim, from one of appellant's two trial counsel that appellant's fear of the electric chair was a factor in causing him to enter the plea, and that the Commonwealth indicated that it would not ask for the death penalty if appellant pleaded guilty. However, the same counsel also testified as follows: "Q. Would you say, sir, that the basis of your recommendation as to a plea was because of the statement he had already given? A. I would say a fair answer is that that is really the main basis of it. The only other thing is the palm print. And, standing alone, I don't know how much weight that would have had, but I would say mainly the statement." Taking all of the testimony together, it may be possible to reconcile it by viewing the above quotation as counsel's legal basis for recommending the plea, and the testimony about a possible death sentence as a motivation apart from the legal aspects of the case. However, we need not decide whether the confession was indeed the primary motivation for the guilty plea, for it is clear that the confession was voluntary.[1]

According to the notes of appellant's trial counsel who testified at the hearing, appellant was arrested no earlier than 7:30 p.m. on the evening of May 18, 1961. He was then taken to City Hall, placed in a cell, taken out for a lineup, and returned to the cell. He confessed orally at 9:00 p.m. and later this was reduced

---

[1] Inasmuch as we hold that the confession was voluntary, we need not consider whether appellant waived his right to litigate the issue of the alleged involuntary confession inducing the guilty plea when he failed to object to the admission of the confession at the degree of guilt hearing.

to writing. Appellant here asserts that his confession was involuntary, because of his low mental capacity and because "they were going to drag my cousin into it."

Appellant had a seventh grade education and some history of mental deficiency. However, he could read and was able to conduct his own affairs with little difficulty. We had occasion recently to treat this issue of retarded mental capacity in *Com. ex rel. Joyner v. Brierley*, 429 Pa. 156, 239 A. 2d 434 (1968). In addition to asserting his mental deficiency, Joyner also asserted that he was not warned of his rights. Although not stressed in the instant case, that factor is present to some extent here, for appellant apparently was warned only that everything he said might be used against him, and was not given the other warnings. What we said in *Joyner*, at page 159, is apposite here: "In Butler, [*Commonwealth ex rel. Butler v. Rundle*, 429 Pa. 141, 239 A. 2d 426 (1968)] we indicated that voluntariness is dependent on many factors. Appellant asserts, as factors tending to make the confession involuntary, his retarded mental state and the fact that he was not warned of his rights. There is no doubt that the mental state of the accused is a relevant factor in determining voluntariness, as it bears on his ability to resist questioning. Butler, supra; Culombe, supra [*Culombe v. Connecticut*, 367 U.S. 568, 604, 81 S. Ct. 1860 (1961)]; Spano v. New York, 360 U.S. 315, 79 S. Ct. 1202 (1959). Nor can it be denied that the absence of warnings is also a factor to be considered in determining voluntariness. Butler, supra; Davis v. North Carolina, 384 U.S. 737, 86 S. Ct. 1761 (1966).

"However, it is clear that these factors alone cannot vitiate this confession. The absence of warnings, alone, obviously is not enough, or Escobedo and Mi-

randa would be retroactive. Johnson v. New Jersey, 384 U.S. 719, 86 S. Ct. 1772 (1966) has held that they are not, and that case has been followed in Pennsylvania. Commonwealth v. Snyder, 427 Pa. 83, 233 A. 2d 530 (1967). Nor can this confession be rendered involuntary merely because of appellant's low IQ. Appellant's own testimony indicates that a large percentage of people have IQ's approximating his and can conduct their affairs with little difficulty. Nor are these two factors in conjunction with each other enough to render a confession involuntary.

"In Butler, supra, we stated that 'it is the continuous questioning which is the crucial element in rendering the confession involuntary.' That factor is absent here."

Here, too, the continuous questioning factor is totally absent. In fact, there is no indication that appellant was questioned more than momentarily before he confessed. He had been in custody for a maximum of only an hour and a half at that time.

The only other thing appellant points to is that the police were going to drag his cousin into it. Apparently, the cousin was not involved in the crime. Yet there is no indication that the police were attempting to trick appellant into confessing. There is evidence that he and his cousin were friendly, they were in fact, arrested together, and the cousin could well have been a suspect. In any event, even if the police were attempting to trick appellant, such a strategem is even less likely to produce an untruthful confession than was the ploy asserted in *Com. v. Baity*, 428 Pa. 306, 237 A. 2d 172 (1968). There, Baity was told a codefendant had fingered him as the trigger man. Baity replied that he was only the lookout. Analyzing the cases, we held that such a ploy was permissible, for a trick which has no tendency to produce a false con-

fession is a permissible weapon in the interrogator's arsenal. *Com. v. Spardute*, 278 Pa. 37, 47, 122 Atl. 161 (1923). Here we cannot believe that appellant would falsely confess to facts amounting to first degree murder because the police might question his cousin. Under all the facts and circumstances of this case, the confession is clearly voluntary.

Second, appellant asserts that the guilty plea was entered unknowingly, that he was unaware of the consequences of such a plea. We cannot agree. It is true that this Court has stated that the trial court should conduct an on-the-record examination of a defendant who desires to plead guilty, in order to ascertain the defendant's knowledge of the nature of the charge, his right to a jury trial, and the general consequences of his plea. *Com. ex rel. Barnosky v. Maroney*, 414 Pa. 161, 165, 199 A. 2d 424 (1964). However, such an on-the-record inquiry is not a prerequisite with respect to upholding guilty pleas entered before those guidelines were announced. Rather, each case must be decided on its facts, and the ultimate question is whether the defendant has understood the plea and willingly entered it. *Com. ex rel. West v. Myers*, 423 Pa. 1, 222 A. 2d 918 (1966). Here, appellant's trial counsel testified: "[H]is concern and ours was that he might be sentenced to death and that the purpose of pleading guilty was that the Commonwealth would not ask for the death penalty. . . . I know that he knew that it could be death [if he went to trial] and that we were trying to save his life." The clear inference from this is that appellant knew he could get a life sentence. Further, counsel testified that he told appellant, "If you plead guilty, you know this is an admission." The evidence surely supports the finding that appellant knowingly entered his plea.

Finally, the evidence also supports the finding that appellant did not receive ineffective assistance of counsel. Counsel interviewed appellant in prison months before his trial. Their notes of the interview demonstrate that it was lengthy and thorough and included discussion of the voluntariness of appellant's confession. Later, counsel held conferences with the Assistant District Attorney. They learned that in addition to a voluntary confession, the Commonwealth's evidence included appellant's palm print found on the inside of the cigarette machine which had been taken apart during the burglary.

Faced with this overwhelming evidence, counsel quite properly decided to advise appellant to plead guilty and to testify against his codefendant, so that the Commonwealth would not seek the death penalty. Their decisions not to challenge the confession introduced at the degree of guilt hearing and to allow appellant to take the stand surely had a reasonable basis. In *Com. ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A. 2d 349 (1967), we held that so long as the course of action taken by counsel has some reasonable basis, it cannot be deemed ineffective assistance. Here, the action by counsel not only had a reasonable basis, but it was probably the best course under the circumstances. They were faced with an ironclad case of first degree murder and hoped conceivably to prevail upon the mercy of the court to find their client guilty of only second degree murder. This they hoped to do by showing that the codefendant struck the fatal blow, of which appellant was not even aware until after it was committed. Appellant's testimony at the degree of guilt hearing thus corroborated his voluntary confession. Appellant's claim of ineffective assistance of counsel is groundless.

The order of the court below is affirmed.